# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CRIMINAL NO. 4:15-CR-248 |
|---|---|---|
| v. | : | (Chief Judge Conner) |
| ROBERT CORMIER | : | |
| Defendant | : | |

## MEMORANDUM

Defendant Robert Cormier ("Cormier") moves the court to withdraw his guilty plea pursuant to Federal Rule of Criminal Procedure 11(d)(2). See FED. R. CRIM. P. 11(d)(2). Cormier claims that prior counsel provided ineffective assistance concerning his exposure to an enhanced sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e). The court will deny Cormier's motion.

## I. Factual Background & Procedural History

On October 22, 2015, a federal grand jury returned an indictment charging Cormier with one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g) and 924(e), to wit: a 9mm Taurus handgun bearing serial number TJF41340. (Doc. 1). The indictment also includes a criminal forfeiture allegation pursuant to 18 U.S.C. §§ 983(a) and 924(d). (Id.) Cormier appeared before a magistrate judge on October 29, 2015 and entered a plea of not guilty. (Doc. 10). The court appointed assistant federal public defender D. Toni Byrd, Esquire ("Attorney Byrd"), as counsel. (Doc. 9).

Cormier appeared before the court and pled guilty to Count I without a written plea agreement on March 18, 2016. (See Doc. 26). The court conducted an

extensive colloquy with Cormier to assess the knowingness and voluntariness of his plea. (See Doc. 64 at 4:22-12:11). Cormier was fully alert and aware of the nature and purpose of the hearing. (Id. at 3:15-4:21). He expressed both an understanding of his constitutional right to a jury trial and a clear desire to waive that right. (Id. at 4:22-6:3). Cormier affirmed that his plea was not actuated or informed by threat, force, or other undue influence, and that he was pleading guilty of his own free will. (Id. at 6:16-7:2).

The court asked Cormier whether he had reviewed the indictment, the consequences of a guilty plea, and potential defenses to Count I with Attorney Byrd. (Id. at 6:4-6, 6:8-10). Cormier responded that he had. (Id. at 6:7, 6:11). The court also asked whether Cormier felt that he "had enough time to speak with [Attorney] Byrd" about his rights and options. (Id. at 6:12-14). Cormier replied, "Yes." (Id. at 6:15).

The court and the parties thoroughly explored Cormier's sentencing exposure in the following exchange:

> THE COURT: Mr. MacArthur, at this time would you kindly place on the record the maximum term of imprisonment under the United States Code for this offense, the fine, maximum term of supervised release, and the details of this conviction if the court accepts the defendant's guilty plea?
>
> MR. MACARTHUR: Yes, Your Honor.
>
> (Brief pause.)

> MR. MACARTHUR: Your Honor, the defendant is charged with a violation of 18 United States Code 922(g). The maximum penalty for this is ten years imprison[ment], a $250,000 fine, three years of supervised release, and a $100 special assessment.
>
> THE COURT: All right.
>
> MR. MACARTHUR: Your Honor, the government also believes that the defendant will be subject to the penalties of the Armed Career Criminal Act at [18 U.S.C. §] 924(e). This is noted in the indictment. The mandatory minimum under the Armed Career Criminal Act is fifteen years imprisonment, a maximum of life, $250,000 fine, five years supervised release, and a $100 special assessment.
>
> THE COURT: All right. So it's really the latter that's determinative in this case if the Armed Career Criminal Act applies.
>
> MR. MACARTHUR: Yes. I expect it will be disputed by the defense.
>
> MS. BYRD: We will.

(Id. at 7:16-8:15). Given the disputed applicability of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), the court twice confirmed Cormier's understanding of ACCA's impact. First, the court asked: "But nevertheless do you understand that those are the penalties that you're facing?" (Doc. 64 at 8:17-18). Cormier answered, "Yes." (Id. at 8:19). In an abundance of caution, the court further queried Cormier on the subject:

> THE COURT: All right. So we're talking about a mandatory minimum term of fifteen years. You understand that if your attorney's arguments are not successful you're certainly at least potentially facing a minimum term of fifteen years?
>
> THE DEFENDANT: Yes.

3

> THE COURT: And a maximum term of life?
>
> THE DEFENDANT: Yes.

(Id. at 8:20-9:1).

The court reviewed sentencing procedure with Cormier as well. (See id. at 9:9-11:19). The court advised that it must consider the United States Sentencing Guidelines in setting an appropriate sentence and that prior convictions may affect the Guidelines sentencing range. (Id. at 9:9-12, 9:23-25). Cormier indicated that he understood the process and had spoken with Attorney Byrd about the Guidelines that may apply in his case. (Id. at 9:9-10:20). Throughout this discourse, the court emphasized to Cormier that his dissatisfaction with the Guidelines range or the sentence ultimately imposed would not be a basis to withdraw his guilty plea. (See id. at 10:5-11:10). The court also cautioned Cormier that an erroneous estimation of the Guidelines range by counsel is not a basis for withdrawal:

> THE COURT: If [Attorney] Byrd or any else has estimated your guideline sentencing range at this time and I determine after I look at the presentence report that the guideline is different from what has been estimated to you, you cannot withdraw your guilty plea. Do you understand that?
>
> THE DEFENDANT: Yes.

(Id. at 11:5-10). Cormier further acknowledged that a Guidelines range is advisory only and that "no one can guarantee [him] what sentence [he] will get from" the court. (Id. at 6:23-25, 11:14-19).

4

The court continued its inquiry, asking Cormier, "[A]re you pleading guilty because you are in fact guilty as charged?" (Id. at 12:12-13). Cormier responded in the affirmative. (Id. at 12:14). The government then proffered the following factual narrative to support the indictment:

> Mr. MacArthur: Thank you, Your Honor. Shortly after midnight on February 7th, 2015 Williamsport police officers responded to a dispatched call of shots fired near the Fifth Avenue Tavern at 500 Fifth Avenue in Williamsport, Pennsylvania. Within a minute police arrived within a few block[s] of the Fifth Avenue Tavern, where they saw a blue sedan speeding down Rafferty Lane, an alley adjacent to the bar.
>
> The car was coming from the direction of the Fifth Avenue Tavern and driving at a high rate of speed. Police turned into Rafferty Lane to investigate. On Rafferty Lane[,] Corporal Jeff Paulhamus found a blue sedan stopped in the alley. Paulhamus shined his spotlight and saw a tall black male dressed in dark clothing, later identified as Robert Cormier, standing at the passenger door of the car.
>
> Cormier opened the front passenger door, leaned inside, and then got in the car. Paulhamus observed both the driver, later identified as Jamal Williams, and Cormier moving in the vehicle, leaning forward and moving back and forth. The car pulled into a driveway when Paulhamus activated his emergency lights.
>
> Williams attempted to exit the vehicle and Cormier continued to move about inside, in defiance of Paulhamus's commands. After backup officers arrived Cormier exited the vehicle. Paulhamus saw blood on his hands and asked Cormier if he was shot. Cormier responded that he didn't know, but that he had fallen on the ice when he was running away. The driver Jamal Williams told police that he had just been at the Fifth Avenue Bar when he heard shots and left, at which time he was flagged down by Cormier, who wanted a ride.

5

> Officers inspected the vehicle to ascertain whether anyone else was inside. On the rear floorboard they observed a black Taurus semiautomatic handgun with the slide and action locked open. This gun was placed in the car by Cormier after he ran with it from the Fifth Avenue Tavern. A witness called 911 after hearing shots at the Fifth Avenue Tavern. He told the 911 operator that moments before he heard shots and saw a black male fleeing down the lane on the north side of the bar, moving "funny" [and] "dragging his left arm."
>
> The witness also said that he saw the shooter holding the gun "hanging down in his right arm" and that he also saw the shooter fire the gun toward the car, which then drove off. The witness described the shooter as a black male, approximately six feet ta, 165 to 175 pounds, wearing a dark hooded sweatshirt and jeans. While police were still on scene the witness and his wife were transported the short distance to the scene where a show up was conducted with Cormier and Williams. Although neither the witness nor his wife clearly saw the face of the shooter, both positively identified Cormier with ninety percent certainty as the person they saw shooting and fleeing behind the Fifth Avenue Tavern with a gun based on physical characteristics and clothing.
>
> Robert Cormier was . . . wearing a dark hoodie and jeans that night. Cormier and Williams were transported to police headquarters where both, after receiving their Miranda rights, agreed to speak with police.

(Id. at 13:4-15:5). In all, law enforcement recovered thirteen fired cartridge casings outside of the Fifth Avenue Tavern and two more from Rafferty Lane. (Id. at 16:7-11). The Pennsylvania State Police forensic laboratory confirmed that all casings were fired by the Taurus handgun recovered from Williams' vehicle. (Id. at 16:11-20).

The government also recounted Cormier's conflicting statements to police. (Id. at 15:12-16:6). In the first statement, Cormier allegedly admitted to possessing a

6

firearm inside of the bar and explained that he needed it "for protection" because "a person named Buck had been shooting at his friend." (Id. at 15:14-23). Cormier claimed that Buck shot at him and that Cormier then "shot back." (Id. at 15:20-21). In his second statement, Cormier denied initial possession of the firearm. (Id. at 15:24-16:6). Cormier instead reported that "it was Buck who initially possessed the gun and Cormier took possession of the gun during a physical struggle for it." (Id. at 16:3-6).

The government lastly recited Cormier's criminal history in support of both the § 922(g) charge and the § 924(e) enhancement. The government identified prior convictions for: (1) robbery, (2) carrying a firearm without a license, (3) endangering the welfare of a child, (4) conspiracy and possession of controlled substances with intent to deliver, and (5) possession with intent to deliver controlled substances. (Id. at 17:3-18).

The court then turned to Cormier and asked, "[D]o you fully admit to the facts that have been placed on the record by the assistant United States attorney?" (Id. at 17:23-25). Cormier hesitated and replied, "No." (Id. at 18:1). Attorney Byrd then clarified that Cormier flatly denies ever having admitted to initial possession of the firearm. (Id. at 18:3-20). She explained that Cormier's position has always been "that he was outside the bar, he was confronted by this guy named Buck," and then "[h]e took the gun away from Buck and shot at him." (Id. at 18:14-20). Cormier concurred with Attorney Byrd's clarifications. (Id. at 19:1-4). The court then asked Cormier directly whether he admits to continued possession of the firearm after the

incident ended and to placing the firearm in the back of Williams' vehicle. (Id. at 19:19-21). Cormier responded that he did. (Id. at 19:22). The parties and the court agreed that the facts admitted would not support a justification defense. (See id. at 19:24-20:11).

Following this discussion, the court found that Cormier was competent to enter a guilty plea, and that he was doing so voluntarily and with full knowledge of the potential consequences. (Id. at 20:19-25). The court accepted Cormier's guilty plea to Count I and ordered preparation of a presentence report, with sentencing to follow. (Id. at 20:25-21:4). Before the court recessed, however, Attorney Byrd noted that Cormier wished to correct the record. (Id. at 21:10-11). Counsel indicated that her recitation of Cormier's version of events was inaccurate and that Cormier in fact denies ever discharging the firearm. (Id. at 21:15-19).

To assure itself that Cormier's plea had a basis in fact, the court asked Cormier to describe exactly what conduct he was admitting to. (Id. at 22:10-13). Cormier testified: "I admit running into Buck, taking the gun, running down the alleyway, and getting into the vehicle with Mr. Williams, but then I attempted to hide the gun from the police." (Id. at 22:14-16). The court and counsel agreed that Cormier's explicit admissions satisfy § 922(g). (Id. at 22:22-23:7). The court reaffirmed its rulings and its acceptance of Cormier's guilty plea. (Id. at 23:4-7).

The probation office prepared a presentence report which concludes, *inter alia*, that Cormier is an armed career criminal subject to the enhanced penalties of the ACCA. (Doc. 30 ¶ 28). The report was filed with the court on October 25, 2016,

and the court scheduled sentencing for November 30, 2016. (See Docs. 30, 34-35). On November 21, 2016, the court received *pro se* correspondence from Cormier expressing concern and confusion regarding his armed career criminal status. (Doc. 38). According to Cormier, Attorney Byrd had advised that he would not be subject to the ACCA and that his sentence would likely be in the five- to seven-year range. (See id.) Cormier attached to his filing correspondence from Attorney Byrd dated May 25, 2016, indicating that her earlier advice was incorrect. (Id. at 3).

Attorney Byrd filed a response to Cormier's correspondence on November 28, 2016. (Doc. 41). Attorney Byrd confirmed her initial advice that Cormier's prior controlled substance offenses would likely not qualify as predicate felonies under the ACCA. (Id. ¶ 3). She explained that, shortly after Cormier's plea, she learned that his convictions likely *would* qualify. (Id. ¶ 6). Attorney Byrd informed Cormier of this mistake immediately and advised him of several options, including moving the court for new counsel or petitioning to withdraw his plea. (Id. ¶ 7; see also Doc. 38 at 3). According to Attorney Byrd, Cormier did not wish to pursue these options. (See Doc. 41 ¶¶ 8, 13-14). In view of Cormier's November 21, 2016 correspondence, Attorney Byrd requested leave to withdraw as counsel. (Id. ¶¶ 23, 26). The court agreed that a potential conflict prevented further representation and granted the request to withdraw. (Doc. 43). The court appointed Michael Morrone, Esquire ("Attorney Morrone"), to represent Cormier. (Id.)

Attorney Morrone filed the instant motion (Doc. 46) to withdraw guilty plea on Cormier's behalf on January 20, 2017. The court scheduled a hearing on

Cormier's motion for February 17, 2017. (Doc. 48). During the hearing, the parties advised that they were exploring a resolution of Cormier's motion. The court recessed to permit additional negotiations. On March 31, 2017, the government filed a status report (Doc. 57) indicating an impasse in the parties' negotiations and requesting that the court take up Cormier's motion. The court convened a second hearing on May 16, 2017, during which Cormier testified to the basis for his instant request. The motion is ripe for disposition.

## II. Legal Standard

Rule 11 of the Federal Rules of Criminal Procedure governs the entry, acceptance, and withdrawal of plea agreements and guilty pleas by criminal defendants. A defendant who pleads guilty has no absolute right to withdraw his plea after it has been entered. See United States v. Brown, 250 F.3d 811, 815 (3d Cir. 2001). The defendant may later move to withdraw the guilty plea after the court accepts it and before the court imposes sentence. In so doing, the defendant must "show a fair and just reason for requesting the withdrawal." FED. R. CRIM. P. 11(d)(2)(B); see also United States v. Jones, 336 F.3d 245, 252 (3d Cir. 2003).[1]

A court's determination whether to permit withdrawal of a guilty plea requires consideration of the facts and circumstances of each case. United States v. Artabane, 868 F. Supp. 76, 77 (M.D. Pa. 1994) (citing United States v. Crowley,

---

[1] The decision in Jones and decisions prior to the 2002 Amendments to the Federal Rules of Criminal Procedure invoke the "fair and just reason" analysis pursuant to Rule 32 of the Federal Rules of Criminal Procedure. The substance of this rule regarding withdrawal of guilty pleas was later transferred to Rule 11(d) and (e). See FED. R. CRIM. P. 32 advisory committee notes (2002 Amendments); see also FED. R. CRIM. P. 11 advisory committee notes (2002 Amendments).

529 F.2d 1066, 1071 (3d Cir. 1976)). The entry of a guilty plea is a solemn act, and a defendant's burden in seeking to annul his plea is "substantial." United States v. King, 604 F.3d 125, 139 (3d Cir. 2010). The court evaluates such motions in view of three factors: (1) whether the defendant asserts his innocence; (2) whether the defendant offers strong reasons in support of his requested withdrawal; and (3) whether withdrawal will prejudice the government. See United States v. Wilson, 429 F.3d 455, 458 (3d Cir. 2005) (quoting Jones, 336 F.3d at 252); United States v. Huff, 873 F.2d 709, 712 (3d Cir. 1989). No one factor is dispositive. See United States v. Wilder, 134 F. App'x 527, 528 (3d Cir. 2005) (nonprecedential) (citing Jones, 336 F.3d at 252-55). The court must balance the factors and determine whether there is a fair and just reason to grant withdrawal. Id.

## III. Discussion

Cormier grounds his request to withdraw his guilty plea in the perceived ineffectiveness of prior counsel. (See Doc. 46 ¶¶ 4-7). Cormier principally asserts that prior counsel provided erroneous advice regarding his sentencing exposure under the ACCA. (See id. ¶¶ 4-5). He also intimates that prior counsel failed to engage in effective plea negotiations or pursue exculpatory evidence. (Id. ¶¶ 6-7). Cormier reiterated these assertions through testimony during the May 16, 2017 hearing.[2] The court considers each of Cormier's arguments herein.

---

[2] The court reporter has provided the court with a draft of the transcript of the hearing, and citations thereto are abbreviated throughout as "05/16/17 Hr'g Tr." The parties should note, however, that pagination of the draft may vary from pagination of the official transcript of proceedings, when available.

11

### A. Assertion of Innocence

An assertion of innocence must be based on facts in the record supporting a claimed defense. Brown, 250 F.3d at 818. Bald assertions of legal innocence are insufficient to satisfy this factor. See id. The law requires a defendant to assert and substantiate *factual* innocence. Id. Failure to assert factual innocence is ordinarily fatal to an endeavor to withdraw a guilty plea. Id.; see, e.g., United States v. Cox, No. 11-99, 2012 WL 3079177, at *4 (D.N.J. July 30, 2012); United States v. Nelson, No. 1:09-CR-211, 2011 WL 882302, at *4 (M.D. Pa. Mar. 11, 2011) (Conner, J.); United States v. Fiorello, No. 08-600, 2010 WL 2516472, at *3 (D.N.J. June 14, 2010).

Cormier does not assert factual innocence. During the change of plea proceeding, Cormier admitted to "running into Buck, taking the gun, running down the alleyway, and getting into the vehicle with Mr. Williams," before "attempt[ing] to hide the gun from the police." (Doc. 64 at 22:14-16). Cormier also acknowledged that his prior convictions prohibit him from possessing a firearm. (Id. at 17:3-13, 22:4-8). Cormier did not rescind his admissions during the hearing on his instant motion. Rather, Cormier *affirmed* them:

> MR. MACARTHUR: Okay. Did you wrestle a gun away from Buck that night?
>
> THE DEFENDANT: Yes.
>
> MR. MACARTHUR: Did you take that gun and put it in the car?
>
> THE DEFENDANT: Correct.

12

(05/16/17 Hr'g Tr. at 11:3-6). Although Cormier maintains that he did not discharge the firearm, (see id. at 9:15-16; Doc. 64 at 21:15-19), discharging the firearm is not an element of the § 922(g) offense charged *sub judice*.[3] (See Doc. 1). Cormier's continued admission of guilt weighs against his instant motion.

Assuming *arguendo* that Cormier had asserted factual innocence, his claim of legal innocence also fails. The Third Circuit Court of Appeals has determined that justification is a valid defense to a § 922(g) felon in possession charge. United States v. Alston, 526 F.3d 91, 94 (3d Cir. 2008) (citing United States v. Paolello, 951 F.2d 537, 540-43 (3d Cir. 1991); United States v. Dodd, 225 F.3d 340 (3d Cir. 2000)). The defense encompasses necessity, self-defense, and duress. See Paolello, 951 F.2d at 540. To establish a justification defense, the defendant must demonstrate by a preponderance of the evidence that:

> (1) he was under unlawful and present threat of death or serious bodily injury;
> (2) he did not recklessly place himself in a situation where he would be forced to engage in criminal conduct;
> (3) he had no reasonable legal alternative (to both the criminal act and the avoidance of the threatened harm); and

---

[3] To the extent counsel suggested during the May 16, 2017 hearing that discharging the firearm is "actually an element of the offense" because that fact may increase the Guidelines sentencing range, we disagree. (See 05/16/17 Hr'g Tr. at 20:14-21). In Alleyne v. United States, 133 S. Ct. 2151 (2013), the Supreme Court held that any fact which increases the statutory mandatory minimum sentence for a crime is an "element" of that crime which must be charged in the indictment and established beyond a reasonable doubt. Id. at 2155. Sentencing enhancements under the Guidelines, however, are not elements of an offense and need only be proven by a preponderance of the evidence at sentencing. See United States v. Freeman, 763 F.3d 322, 335-36 (3d Cir. 2014).

13

> (4) there is a direct causal relationship between the criminal action and the avoidance of the threatened harm.

Alston, 526 F.3d at 95 (quoting Paolello, 951 F.2d at 540).

Cormier adduces no facts to support his purported justification defense.[4] To the extent he claims to have wrested the firearm from Buck for self-protection, Cormier offers neither *allegata* nor *probata* to suggest that the perceived threat was ongoing when he later chose to retain the firearm and hide it in Williams' vehicle. The defense of justification applies only when the "immediacy and specificity of the threat" is sufficiently compelling. Id. at 96. It is foreclosed when the "danger presented . . . subside[s]." United States v. Jackson, No. 1:12-CR-69, 2015 WL 2341137, at *7-8 (W.D. Pa. May 14, 2015). Cormier cannot establish legal innocence of the offense charged.

### B. Strength of Reasons for Withdrawing Plea

When a defendant offers sufficiently weighty reasons for withdrawing his plea, the court may grant the motion notwithstanding a failure to assert factual innocence. United States v. Stayton, 408 F.2d 559, 561 n.5 (3d Cir. 1969). Cormier's reasons for seeking withdrawal are twofold: first, Cormier is unhappy with and allegedly surprised by the Guidelines range calculated in the presentence report, and second, he desires to explore the justification defense abandoned during his

---

[4] During the May 16 hearing, Attorney Morrone did not expressly state that Cormier intends to renew a defense of justification. (See 05/16/17 Hr'g Tr. at 20:22-24). Rather, he identified the alleged justification as a "mitigating factor." (Id.) Nonetheless, the suggestion that prior counsel was ineffective for failing to obtain video evidence to buttress such a defense tasks the court to assess its validity. (See id. at 5:14-20, 6:2-7:1, 22:5-7; Doc. 46 ¶¶ 7-8).

14

guilty plea hearing.  (See Doc. 46 ¶¶ 4-8).  For the reasons set forth *supra*, Cormier's purported justification defense is meritless.  We consider only Cormier's claim that prior counsel failed to adequately apprise him of his sentencing exposure.

A court may allow withdrawal of a guilty plea on the basis of purported ineffective assistance of prior counsel only when (1) the defendant establishes that prior counsel's advice was "unreasonable under prevailing professional norms" in view of all of the circumstances and (2) the defendant suffered prejudice flowing from said error.  Jones, 336 F.3d at 253-54.  For purposes of our analysis, we assume without deciding that prior counsel's advice anent Cormier's sentencing exposure was professionally unreasonable.

This assumption notwithstanding, Cormier cannot demonstrate prejudice.  A shift in defense strategy, change of heart by the defendant, or fears of punishment are insufficient to authorize withdrawal of a guilty plea.  See id. at 252; Brown, 250 F.3d at 815.  When a defendant seeks to withdraw his plea based on an expectation of a lighter sentence, the defendant must show that his expectation was objectively reasonable under the circumstances.  See United States v. Crusco, 536 F.2d 21, 24 (3d Cir. 1976).  The court considers advice from prior counsel as well as any assurances by the government and statements by the court during or preceding the guilty plea hearing.  See id.  In most cases, whatever prejudice may have flowed from an erroneous prediction by plea counsel will be dispelled by a thorough Rule 11 plea colloquy.  See United States v. Shedrick, 493 F.3d 292, 299 (3d Cir. 2007);

Jones, 336 F.3d at 254; United States v. Mustafa, 238 F.3d 485, 492 (3d Cir. 2001). Such is the case *sub judice*.

Cormier contends his prior counsel assured him that she did not believe he was an armed career criminal and that he would likely receive a sentence within a 63 to 78 month range. (05/16/17 Hr'g Tr. at 7:7-15). Yet Cormier voiced no concern when the court unequivocally stated that he faced a potential mandatory minimum term of fifteen years' imprisonment—a sentence nearly three times that estimated by his counsel. (Doc. 64 at 7:16-9:1). Moreover, the court explicitly advised Cormier that he would be bound by his guilty plea even if his counsel's estimates were wrong or her arguments concerning the ACCA were unsuccessful. (Id. at 8:20-9:1, 10:21-11:10). Cormier clearly understood the risks described by the court and persisted in his desire to plead guilty. (Id.)

Somewhat surprisingly, during the hearing on the instant motion, Cormier reconfirmed his understanding. (See 05/16/17 Hr'g Tr. at 13:14-16:24 (agreeing that the court, prosecutor, and prior counsel all stated "that the minimum was 15 [years] and the maximum was life")). Cormier also testified to prior counsel's advice that, notwithstanding her estimation, the ultimate sentence "was up to the judge," (id. at 15:9-25), and that his sentencing range may be as high as fifteen years to life imprisonment, (id. at 16:18-24). There can be no dispute on the present record that Cormier was fully cognizant of, and acceded to, his potential ACCA exposure.

Cormier also suggests that his guilty plea was not voluntary. In support of this argument, Cormier claims his plea was induced by counsel's errors regarding

16

likely sentence length.  (See 05/16/17 Hr'g Tr. at 8:21-25, 17:18-18:12).  Cormier further asserts that he felt pressured to plead guilty by prior counsel's prediction that the government might otherwise pursue a superseding indictment triggering higher penalties.  (See id. at 22:5-18).

A defendant bears the burden of establishing that his plea was neither knowing nor voluntary.  See United States v. Stewart, 977 F.2d 81, 85 (3d Cir. 1992).  The Third Circuit has long held that an "erroneous prediction of a sentence by a defendant's counsel does not render a guilty plea involuntary."  Masciola v. United States, 469 F.2d 1057, 1059 (3d Cir. 1972).  To hold that counsel's estimations can override the court's admonitions would vitiate the purpose of a Rule 11 colloquy.  See Brown v. United States, 75 F. Supp. 2d 345, 355 (D.N.J. 1999) (collecting cases).  Such considerations are precisely the reason that courts explain applicable statutory maximum and minimum sentences during plea proceedings and assure themselves that defendants understand those boundaries.  See id.  Consequently, involuntariness claims are properly rejected when, during the Rule 11 colloquy, the court addresses sentencing exposure with the defendant and the defendant expresses an understanding of that exposure.  See, e.g., United States v. Hampton, 444 F. App'x 583, 586-87 (3d Cir. 2011); United States v. Mollica, 284 F. App'x 990, 996-97 (3d Cir. 2008); United States v. Selby, 210 F. App'x 219, 221 (3d Cir. 2007).[5]

---

[5] The court acknowledges that nonprecedential decisions are not binding upon federal district courts.  Citations to nonprecedential decisions herein reflect that the court has considered the panel's *ratio decidendi* and is persuaded by same.

17

During the change of plea hearing, the court cautioned Cormier that any estimation by counsel was not binding on the court. (Doc. 64 at 11:5-9). Cormier acknowledged that his sentence would be within the court's sole discretion and that he could not withdraw his plea based on displeasure with that sentence. (Id. at 10:5-11:10). Moreover, the court advised Cormier that "[i]f [Attorney] Byrd or anyone else has estimated your guideline sentencing range at this time and I determine . . . that the guideline is different from what has been estimated to you, *you cannot withdraw your guilty plea.*" (Id. at 11:5-9 (emphasis added)). Cormier confirmed his understanding of this limitation and declined the opportunity to ask questions of the court. (Id. at 11:10). Cormier's responses to the court's exhaustive inquiries reflect a knowing and voluntary plea.

Nor do Cormier's suggestions of "pressure" or "duress" merit withdrawal. During the hearing on the instant motion, Cormier suggested that prior counsel's warning about a superseding indictment created "a certain amount of duress" to enter a guilty plea with dispatch. (05/16/17 Hr'g Tr. at 22:5-24). To whatever extent Cormier felt pressured by the prospect of a looming superseding indictment, it is well established that fear of punishment, without more, is not an adequate basis to withdraw a guilty plea. See Brown, 250 F.3d at 815 (quoting United States v. Jones, 979 F.2d 317, 318 (3d Cir. 1992), superseded on other grounds as stated in United States v. Roberson, 194 F.3d 408, 417 (3d Cir. 1999)).[6]

---

[6] We note separately that counsel it is not unreasonable for informing her client about the likelihood of additional charges. In our view, it would have been ineffective for prior counsel *not* to raise this possibility with Cormier.

18

What is more, the court asked Cormier directly whether he felt he had sufficient time to discuss his guilty plea with his prior counsel. (Doc. 64 at 6:12-14). Cormier replied, "Yes." (Id. at 6:12-15). The court also asked Cormier whether anyone had promised or offered him anything in exchange for his guilty plea, and Cormier answered, "No." (Id. at 6:16-18). Cormier denied that threats of force, violence, or other inducement motivated his plea. (Id. at 6:19-22). When queried by the court, Cormier affirmed that he was pleading guilty of his "own free will" and because he was in fact "guilty as charged." (Id. at 7:1-2, 12:12-14). The court is satisfied that Cormier's guilty plea was knowing, voluntary, and intelligent.

The record establishes that Cormier engaged in a thorough and searching open-court colloquy during which the court articulated the terms of his guilty plea and the sentencing exposure attending said plea. Cormier clearly understood the implications of his decision, including the enhanced penalties of the ACCA. He knowingly, voluntarily, and intelligently entered into his guilty plea. Cormier's unwavering admission of guilt and his failure to articulate a compelling reason for withdrawal of his plea defeat the instant motion.[7]

---

[7] Because Cormier cannot establish innocence and offers insufficient reasons for withdrawing his plea, we need not reach the issue of potential prejudice to the government. See Jones, 336 F.3d at 255.

**IV.    Conclusion**

Cormier has failed to demonstrate fair and just reasons for withdrawal of his guilty plea.  See FED. R. CRIM. P. 11(d)(2)(B).  Accordingly, the court will deny Cormier's motion.  An appropriate order shall issue.


     /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:    May 24, 2017